**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
PATRICK FRANCIS,              :
                              :      Civil Action
              Petitioner,     :      No. 06-487 (DRD)
                              :
         v.                   :      O P I N I O N
                              :
RONALD CATHEL et al.,         :
                              :
              Respondents.    :
_____:
```

**APPEARANCES:**

> PATRICK FRANCIS, #299321, Petitioner Pro Se
> New Jersey State Prison
> Trenton, New Jersey  08625
>
> ZULIMA FARBER, Attorney General for the State of New Jersey
> ADRIENNE BEARD REIM, Deputy Attorney General
> Trenton, New Jersey 08625
> Attorney for Respondents

**Dickinson R. Debevoise, District Judge**

Petitioner PATRICK FRANCIS (hereinafter "Petitioner") serving a thirty years sentence imposed by the State of New Jersey for aggravated manslaughter, possession of a handgun for unlawful purposes and possession of a handgun without a permit, see , State v. Francis, A-7411-97T4 at 1-2 (N.J. App. Div., Oct. 11, 2000), filed a Petition (hereinafter "Petition") for a Writ of Habeas Corpus challenging his conviction pursuant to 28 U.S.C. § 2254(a). See Pet. ¶¶ 3-4.  Respondents filed an Answer (hereinafter "Answer") seeking dismissal of the Petition on the merits and for failure to state a federal claim.  See generally, Ans.

For the reasons expressed below, the Court dismisses the Petition and declines to issue a certificate of appealability.

## BACKGROUND

Petitioner challenges a judgment of conviction entered in the Superior Court of New Jersey, Passaic County, on February 28, 1998, after a jury found him guilty of aggravated manslaughter. See Pet. ¶¶ 4-6. Petitioner appealed, and on October 11, 2000, the Superior Court of New Jersey, Appellate Division, affirmed his conviction. See id. ¶ 9. The New Jersey Supreme Court denied his petition for certification on April 2, 2001. See id.

Petitioner also filed a petition for post-conviction relief, which was denied by the Superior Court of New Jersey, Passaic County, on January 2, 2004. See id. ¶ 11; Ans. at 10. The Appellate Division affirmed the denial on June 7, 2005, see Ans. at 10, and the New Jersey Supreme Court denied Petitioner's petition for certification on December 19, 2005. See State v. Francis, 185 N.J. 596 (2005).

In its decision, the Appellate Division summarized Petitioner's criminal case as follows:

> [Petitioner's] conviction stemmed from his participation in a verbal argument between himself and Tyrone Porter . . . . The argument escalated into a physical confrontation between [Petitioner] and Porter with the involvements of various [other individuals, one of whom,] Junias Green[,] sided with Porter in the fight. . . . [A] gun belonging to [Petitioner] was retrieved from [Petitioner's] car at [Petitioner's] direction;

2

> [Petitioner] took possession of the gun [and, together
> with his associates] pursued Green. [Petitioner] handed
> [the gun] to [Petitioner's] friend Rodney Smith [and,] as
> Green was climbing a fence to get away, [Petitioner]
> directed Smith to "shoot the motherfucker," whereupon
> Smith did so. Green died from the gun shot.

State v. Francis, A-7411-97T4 at 2 (N.J. App. Div., Oct. 11, 2000).

On February 1, 2006, Petitioner executed the instant § 2254

Petition. See Docket Entry No. 1. The Court notified Petitioner

of the consequences of filing such a Petition under the

Antiterrorism and Effective Death Penalty Act, and gave him an

opportunity to withdraw the Petition and file one all-inclusive

Petition pursuant to Mason v. Meyers, 208 F.3d 414 (3rd Cir. 2000),

which Petitioner declined. See Docket Entries Nos. 8, 9.

Petitioner raises the following six grounds:

> Ground One: [Petitioner] was denied . . . effective
> assistance of counsel. (A) Trial Counsel failed to
> conduct an adequate investigation[,] and (B) [C]ounsel
> was ineffective when he failed to object [to] and allowed
> hearsay testimony into trial.

> Ground Two: Violation of Petitioner's Sixth Amendment
> Rights. [A] jur[or who] was related to the lead detective
> . . . was allowed to remain on the Grand Jury panel.

> Ground Three: Violation of Petitioner's Sixth and
> Fourteenth [Amendments] Rights. Trial judge dismissed the
> only black jur[or] that was on the [Petit] jury panel.

> Ground Four: Trail court allowed unfair and prejudicial
> evidence into trial. The .380 handgun that was permitted
> into evidence was not the actual murder weapon.

> Ground Five: The trial court jury instructions were
> distorted. Based on the evidence and testimony[,] the
> trial judge should have given a jury charge . . . on [a]
> lesser included offenses . . . .

>       Ground Six: Judicial misconduct.  The trial judge
>       instructed the State's attorney to lie about how Carl
>       Brown and [Petitioner] had contact.

Pet., at 5-6, 6(a).


## STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code grants federal district courts subject matter jurisdiction to entertain a claim that a state prisoner is in custody in violation of the Constitution, laws or treaties of the United States.  Section 2254(a) provides, in pertinent part:

>       . . . a district court shall entertain an
>       application for a writ of habeas corpus in
>       behalf of a person in custody pursuant to the
>       judgment of a State court only on the ground
>       that he is in custody in violation of the
>       Constitution or laws or treaties of the United
>       States.

28 U.S.C. § 2254(a).

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254, Rule 2©).  The petition must "specify all the grounds for relief which are available to the petitioner," and set forth "the facts supporting each of the grounds thus specified."  See Rule 2© of the Rules Governing Section 2254 Cases.

Significantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law

4

questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3rd Cir. 1997), cert. denied, 522 U.S. 1136 (1998). A federal district court must dismiss a habeas corpus petition, summarily or otherwise, if it does not assert a constitutional violation. Siers v. Ryan, 773 F.2d 37, 45 (3rd Cir. 1985), cert. denied, 490 U.S. 1025 (1989); Rule 4 of the Rules Governing Section 2254 Cases.[1] "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

Moreover, in reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the

---

[1]
Rule 4© provides: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." The Advisory Committee Notes to Rule 4 emphasize that "'notice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" (citing Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970)).

Miranda warnings to be involuntary under due process criteria");
Baker v. Barbo, 177 F.3d 149, 156 n.7 (3rd Cir. 1999) (where
petition contains ground asserting the ineffective assistance of
counsel during plea negotiations and trial, court is not permitted
to  consider ground, evident from the facts but not raised in the
petition, that appellate counsel was ineffective by failing to
advise petitioner that he faced a longer sentence by appealing the
conviction).  Nor may the Court recharacterize a ground asserted
under state law into a federal constitutional claim.  See Engle,
456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged
the correctness of the self-defense instructions under state law,
their petitions alleged no deprivation of federal rights and § 2254
was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10
(3rd Cir. 1994) (where petitioner asserted in § 2254 petition that
the exclusion of testimony violated his rights under state law,
federal court may not consider ground, not set forth in the
petition, that exclusion of the testimony violated his federal due
process rights).

A district court must give deference to determinations of
state courts.  Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert.
denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90
(3d Cir. 1996).  Federal courts "must presume that the factual
findings of both state trial and appellate courts are correct, a
presumption that can only be overcome on the basis of clear and

convincing evidence to the contrary." <u>Stevens v. Delaware Correctional Center</u>, 295 F.3d 361, 368 (3d Cir. 2002).

Where a federal claim was "adjudicated on the merits" in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*.

28 U.S.C. § 2254(d) (emphasis supplied).[2]

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court

---

[2]
    "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir.2001)).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. <u>Rompilla</u>, 355 F.3d at 247. However, if an examination of a state court opinion reveals that the state court did not decide a federal claim on the merits, the standards of review set out in § 2254(d)(1) do not apply. <u>Id</u>. at 248.

and nevertheless arrives at a [different] result." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; therefore, an application may be incorrect yet still not unreasonable. <u>Id</u>. at 409-10.

A court must begin the analysis by determining the relevant clearly established law. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003).

Lastly, if the petitioner did not present certain ground (hereinafter "Unexhausted Grounds") to the New Jersey courts on direct appeal or in his petition for post conviction relief and the claim is not exhausted, this Court will not dismiss the petition as a mixed petition if none of these Unexhausted Grounds presents a

8

colorable federal claim. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

## DISCUSSION

### A. Claims Expressly or Implicitly Based on Ineffective Assistance of Counsel

#### 1. Applicable Standard

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an

objective standard of reasonableness." Id. at 687-88. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. See id. In other words, Petitioner shall state a claim sufficient enough to rebut the presumption of his counsel's competence by proving that Petitioner's representation was: (a) unreasonable under the prevailing professional norms; and (b) not a sound strategy. See Kimmelman v. Morrison, 477 U.S. 365 (1986). Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.

Finally, since the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396, the ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. See

10

Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

It shall be noted, however that, while defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing," Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). The term "'consult' convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes," Flores-Ortega at 478, "it is a well established principle that counsel decides which issues to pursue on appeal," Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996), and the appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000).

11

### 2.   Challenges Related to Petitioner's Counsel

In the Ground One in his Petition, Petitioner argues that his trial and appellate counsel was ineffective because the trial counsel "failed to conduct an adequate investigation" and "failed to object [to] and allowed hearsay testimony into trial," and the appellate counsel did not raise the hearsay issue.  See Pet. at 5.

None of these claims has merit.


### a.   FAILURE TO CONDUCT AN ADEQUATE INVESTIGATION

Petitioner sets forth the following facts in support of his claim that his counsel did not conduct an adequate investigation: (1) Petitioner "had virtually no contact with defense counsel in the months leading up to the trial,"[3] Pet., Mem. at 24; (2) "Defense counsel . . . failed to properly interview and subpoena important witnesses and information [causing Petitioner undue prejudice because] several witnesses were not called [namely, Petitioner'] father, Angel Denise Leary, Asia Pitt, Lawanda Sexton, Brian Spruill and [Petitioner's] mother," id.; and (3) "trial court even . . . admonish[ed] defense counsel for being unprepared [specifically, for] request[ing] . . . the prosecution to explain

---

[3]

Since Petitioner simultaneously asserts that "counsel had accepted representation of [Petitioner] just prior to the commencement of trial," Pet., Mem. at 24, this Court is not entirely clear as to how the counsel could err by failing to contact Petitioner "in the months leading up to the trial" if the counsel was not even representing Petitioner during these months.

why . . . Carl Brown was incarcerated [as well as for] attempt[ing] to obtain a postponement of the testimony of witness Tonya Hogan [and for using] court's time to investigate" prior criminal record of another witness, Reginal Williams.[4]  Id.

Petitioner alleges that, as a result of counsel's unpreparedness and failure to call the witnesses listed by Petitioner, the jury did not obtain crucial information.  See id. However, elaborating on the *facts* that, allegedly, constituted such crucial information, Petitioner sets forth nothing but paraphrasing of *his own claims,* i.e., that his counsel was ineffective,[5] with one exception, namely, the allegation that the jury did not learn "how [Petitioner's] scar was received, [or about his] sensitivity

---

[4]    Although the record does not support Petitioner's claim that the trial judge made any comments that could be qualified as such "admonishment" with respect to Carl Brown, the Court notes, in passing, that the outcome of this Court's analysis would be the same had such "admonishment" been in the record for the reasons stated with respect to other alleged "admonishments."

[5]    Specifically, Petitioner's allegations are limited to (1) a citation of a Seventh Circuit case, which cannot qualify as a piece of factual information that Petitioner's counsel failed to convey to the jury, (2) a repeat of Petitioner's claim that "counsel failed to conduct and perform pretrial investigation," which similarly cannot qualify as factual information; (3) Petitioner's breach of contract type of claim that "counsel misled [him] when [counsel] assured him that [counsel] would have no problem in being prepared," which is not factual information either; and (4) Petitioner's self-serving bald conclusion that "[c]ounsel's failure to conduct a proper investigation constitutes ineffective assistance," which is not a piece of information by a claim that Petitioner should have been proving.  Pet., Mem. at 25.

13

toward the scar, [and] how he felt about the nickname . . . 'Scarface.'" Id.

Petitioner's claim based on scarcity of contact with his counsel has no merit.  Nothing in the language of Strickland and its progeny mandates a certain minimum amount of contact between a defendant and his/her counsel, since effectiveness of counsel is not defined in terms of amount of contact between the counsel and the client.  Even extremely scarce contact between the defendant and counsel is sufficient if the resulting counsel's performance was not "unreasonable under the prevailing professional norms," Kimmelman, 477 U.S. 365, and the defendant was not unreasonably disadvantaged, see Strickland, 466 U.S. at 695.  Since the Strickland test is not set forth in terms of billable hours, Petitioner's claim based on scarcity of contact with his counsel has no merit.

Petitioner's claims based on counsel's "failure to investigate" or "failure to call witnesses" fair no better.  In order for such claims to be viable, a petitioner has to establish what information that would have been obtained from the investigation and/or the witnesses would have produced a different result at trial. See Hamilton v. Vasquez, 17 F.3d 1149, 1157 (9th Cir.), cert. denied sub nom, Calderon v. Hamilton, 512 U.S. 1229 (1994); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989); accord United States v. Harris, 408 F.3d 186, 190 (5th Cir.)

(indicating that non-calling of a witness is an issue of strategy not challengeable on collateral review), <u>cert.</u> <u>denied</u>, 126 S. Ct. 297 (2005); <u>Virgin Islands v. Weatherwax</u>, 77 F.3d 1425, 1434 (3rd. Cir.) (same), <u>cert.</u> <u>denied</u>, 519 U.S. 1020 (1996). However, Petitioner's application is void of any indication *what* factual evidence favorable to Petitioner could have been obtained from such abstract "investigation" or from Angel Denise Leary, Asia Pitt, Lawanda Sexton and Brian Spruill, as well as *how* this evidence would have altered the outcome of Petitioner's trial. <u>See</u> <u>generally</u>, Pet. Moreover, the certifications provided by Petitioner to his trial court with respect to Petitioner's parents indicated that testimony of Petitioner's parents would have been damaging to Petitioner's case. <u>See</u> Ans., Ex. RE34 at 24-9:27:2. Therefore, the decision of Petitioner's counsel not to call Petitioner's parents as witnesses was clearly a result of trial strategy not challengeable during collateral review. <u>See</u> <u>Virgin</u> <u>Islands</u>, 77 F.3d at 1434. Since Petitioner's Petition and Memorandum (1) fail to provide this Court with any viable allegations that his counsel failed to investigate important matters or failed to call witnesses whose testimony would alter the outcome of Petitioner's trial, and (2) indicates that Petitioner's trial counsel decision not to call these witnesses was dictated by the counsel's proper exercise of trial strategy, Petitioner's

15

claims based on failure to investigate and/or failure to call certain witnesses should be dismissed..

Furthermore, Petitioner's claims based on alleged trial court "admonishments" of Petitioner's counsel for either taking too much time to establish certain bases or for seeking an adjournment are of no relevance since neither Petitioner's application nor his trial record indicate that the jury was precluded from obtaining any relevant information from the witnesses whose testimonies were prolonged or adjourned. See generally, Pet. Even if this Court is to hypothesize that Petitioner's counsel presented the evidence to the jury because of the trial court's guidance (or by causing the trial court's displeasure with time-consuming testimonies or prolongation of the trial), these allegations are irrelevant to the inquiry into effectiveness of Petitioner's counsel since the test articulated in Strickland, 466 U.S. at 686, focuses on the net result of counsel's performance rather than on counsel's ability to achieve the result singlehandedly and/or by delighting the trial court with speed of counsel's examinations.

Finally, Petitioner's assertion that the jury was unduly deprived of learning about Petitioner's sensitivity to his alias "Scarface" is similarly of no relevance to the issue of effectiveness of Petitioner's counsel, since the charges faced by Petitioner were unrelated to his scar or his sensitivities to his alias, and no claims to the contrary were ever made by the

16

prosecution.  See generally, Ans., Record.  Moreover, even if thus
Court is to hypothesize that the prosecution somehow hinted
nonverbally at any connection between Petitioner's scar and/or
alias and Petitioner's charges, Petitioner could not have been
subjected to even a shred of indirect bias by the jury because of
Petitioner's trial court's explanation to the jury that (1)
Petitioner's scar had nothing to do with Petitioner's criminal
case; and (2) street names, such as "Scarface," are commonly used
in the inner city, the place of Petitioner's origin.   See Ans.
Exs., RE22 at 95-1:24; RE34 at 27-3:25.

     In view of the foregoing, this Court concludes that the state
court's findings that Petitioner's trial counsel was sufficiently
effective, see State v. Francis, A-4079-03T4 at 5-6 (Jun. 7, 2005),
were not an unreasonable application of this Supreme Court's
precedent in Strickland, 466 U.S. at 695, and should be upheld.
See Williams, 529 U.S. at 405-06.


          b.   FAILURE TO OBJECT TO HEARSAY

     In his Ground One (B), Petitioner asserts that his trial
counsel should have objected to two instances of hearsay: (1)
Robert Taylor's testimony that Curtis Smith, a friend of Taylor's,
asked Taylor to take possession of the murder weapon; and (2)
Smith's testimony that Smith transferred the murder weapon to
Taylor because an unidentified person had called Smith's at home

17

letting Smith know that the weapon was indeed used in a homicide. See Pet., Mem. at 26-79 (citing, presumably, to Ans. Exs. RE28 at 4-1: 22, 64-2:25).  However, Petitioner's submission in no way indicates how Petitioner's interests were disadvantaged by these hearsay statements and how the outcome of Petitioner's trial would differ had these statements were not admitted.  See Pet., Mem. at 26-79 (alleging only that the statements indicated a conspiracy between Taylor and Smith).  Moreover, since--in order to establish facts favorable to Petitioner--Petitioner's trial counsel had to obtain statements from Smith as to the chain of control and possession over the murder weapon, see Ans., Ex. Re28 at 40-13:42:4, and the full tracking of this chain of control required acknowledgment of the fact that Smith transferred the murder weapon to Taylor, the counsel had no reason to object the testimony which laid the groundwork for counsel's own strategy, and this Court has neither a reason nor the right to second-guess the strategy.  See O'Harra, 24 F.3d at 828.  This Court is aware of no provision in the Federal Rules of Evidence and of no language in the Strickland decision *mandating* counsel to object to hearsay favorable to the interests of the counsel's client, and Petitioner enlightens this Court about no such legal source.  While Petitioner's counsel was entitled to object to these hearsay statements, the sole fact that no objection was entered cannot automatically render counsel's performance ineffective, just as it cannot satisfy either prong of

18

the <u>Strickland</u> test.[6]   Therefore, the state court findings to the same effect, <u>see</u> <u>State v. Francis</u>, A-4079-03T4 at 5-6 (Jun. 7, 2005), being not an unreasonable application of this Supreme Court's precedent, will be upheld.  <u>See</u> <u>Williams</u>, 529 U.S. at 405-06.

In sum, this Court concludes that Petitioner's claims based on performance of Petitioner's trial and appellate counsel are without merit.

### 2.   Challenges Related to Grand and Petit Jury Composition

In his Ground Two, Petitioner asserts that a juror related to the lead detective (by being a sister-in-law) was allowed to remain on the Grand Jury panel in violation of Petitioner's constitutional rights. <u>See</u> Pet., Mem.,  at 28-33.   However, the state court determined that it

> cannot find . . . that the failure to challenge the indictment due to the familial relationship between one of the detectives and a grand juror caused any prejudice. The detective's testimony consisted entirely of reading witness statements to the grand jurors.  The grand jury was not required to evaluate her credibility.  Therefore, her relationship to a grand juror could not have influenced the evaluation of the evidence presented to the grand jury.

------

[6] Similarly, Petitioner's appellate counsel's decision not to raise the hearsay issue on appeal cannot indicate ineffective assistance of the appellate counsel, since the appellate counsel was entitled to discard this lame matter in favor of more promising issues. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. at 288.

State v. Francis, A-4079-03T4 at 7.  This Court agrees with the
state court that the relationship between the grand juror and the
detective did not taint the indictment process so to deny
Petitioner Fourteenth Amendment due process.

Moreover, applying the Supreme Court's reasoning in United
States v. Mechanik, 475 U.S. 66 (1986), to the facts of this case,
this Court concludes that, even assuming the truth and validity of
Petitioner's claims with respect to his Grand Jury composition, the
Petit Jury's verdict of guilty rendered any Grand Jury error
harmless beyond a reasonable doubt.   In Mechanik, the Supreme
Court stated:

> the [applicable] Rule protects against the danger that a
> defendant will be required to defend against a charge for
> which there is no probable cause to believe him guilty.
> . . . But the petit jury's subsequent guilty verdict not
> only means that there was probable cause to believe that
> the defendants were guilty as charged, but that they are
> in fact guilty as charged beyond a reasonable doubt.

475 U.S. at 70.  Therefore, the state court findings with respect
to Petitioner's challenges based on Grand Jury composition were not
an unreasonable application of this Supreme Court's precedent, and
will be upheld.  See Williams, 529 U.S. at 405-06.

In his Ground Three, Petitioner alleges that his
constitutional rights were violated when his trial judge excused
the only black juror from Petitioner's Petit Jury panel on the
grounds that the juror lived in the area of the crime Petitioner
was charged with and in close proximity to the residences of

Petitioner and victim's families and, in addition, the juror personally knew certain witnesses involved in Petitioner's criminal case. <u>See</u> Pet., Mem. at 34-36. However, Petitioner disappointment with excuse of the juror from the panel is irrelevant to Petitioner's constitutional rights.

Petitioner has no right to the racial jury composition of his choice, and the fact that Petitioner's Petit Jury ended up having no African American jurors does not state a constitutional violation. <u>See</u> <u>Virgin Islands v. Weatherwax</u>, 77 F.3d 1425, 1432 (3d Cir.), <u>cert. Denied</u>, 519 U.S. 1020 (1996) (citing <u>Batson v. Kentucky</u>, 476 U.S. 79, 96-98 (1986); <u>Georgia v. McCollum</u>, 505 U.S. 42, 59 (1992); <u>McCleskey v. Kemp</u>, 481 U.S. 279, 287 (1987)). Therefore, Petitioner's claim that he was unconstitutionally prejudiced by being tried to the Petit Jury containing no African American jurors has no merit and will be dismissed for failure to state a claim.

### 3.   Challenges Not Stating a Federal Claim

Petitioner's Grounds Four, Five and Six claim do not state *what constitutional rights* of Petitioner were violated. <u>See generally</u>, Pet. and Mem. With respect to these Grounds, both Petitioner's Memorandum and Petition are filled with nothing but generalities such as "[t]his case is an illustration of the crucial need for the trial judge to 'mold the instructions in the manner

that explains the law," "[a] judge should refrain from . . . activities which may tend to lessen public respect." Pet., Mem. at 42, 44.  Such generic proclamations, however, do not state a federal claim, regardless of Petitioner's conclusions that "evidence created . . . unfair prejudice to [Petitioner] and ultimately deprived him of a fair trial," and that he "was deprived of a fair trial and his conviction should be reversed." Id. at 43, 45.

A habeas petitioner must challenge his custody "on the ground that he is in custody in violation of *the Constitution or laws or treaties of the United States*."  28 U.S.C. § 2254(a) (emphasis supplied); see also 28 U.S.C. § 2254 Rule 2(c)(1) & (2) (petition shall "specify all the grounds for relief available to the petitioner [and] state the facts supporting each ground").  Because Petitioner does not claim a violation of the federal Constitution or laws, this Court lacks subject matter jurisdiction over his Grounds Four, Five and Six.

Although Petitioner asserts denial of a "fair trial," such a claim does not, without more, assert a federal constitutional claim.  See, e.g., Duncan v. Henry, 513 U.S. 364 (1995); Keller v. Larkins, 251 F.3d 408, 413-415 (3d Cir. 2001).  For example, in Duncan v. Henry, the Supreme Court held that "miscarriage of justice" does not assert a federal constitutional claim.  The Supreme Court cautioned:  "If a habeas petitioner wishes to claim

22

that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so . . ." Duncan, 513 U.S. at 366.  Significantly, relying on Duncan v. Henry, the Third Circuit ruled in Keller v. Larkins, 251 F.3d at 413-415, that denial of a "fair trial" does not assert a federal constitutional claim:

> [A petitioner does] not invoke the federal due process guarantee [if the petitioner merely] claim[s] that admission of the evidence produced a "miscarriage of justice" [or] argues that the [trial process] denied him a "fair trial." Since the Supreme Court found the former language insufficient to give fair notice of a federal due process claim, we are hesitant to attach greater significance to the passing reference to the concept of a "fair trial" on which [the petitioner's] argument rests.

Keller, 252 F.3d at 415; see also Baldwin v. Reese, 541 U.S. 27, 33 (2004) (claim of "ineffective assistance of appellate counsel," which "provides no citation of any case that might have alerted the court to the alleged federal nature of the claim" does not assert a federal claim).  Therefore, Petitioner's Grounds Four, Five and Six claim should be dismissed for lack of jurisdiction.

a.   CHALLENGES BASED ON ADMISSION OF EVIDENCE

Moreover, even if Petitioner had stated any federal grounds in support of his Grounds Four, Five and Six, the facts presented in these Grounds do not indicate any violation of Petitioner's constitutional rights.

23

In his Ground Four, Petitioner alleges that his trail court unduly allowed "unfair and prejudicial evidence into trial" in the form of ".380 handgun that . . . was not the actual murder weapon." Pet., Mem. at 37-39.   This claim, however, cannot have merit. Admissibility of evidence by the state court is a matter of state law unless the admission of evidence is so prejudicial to preclude a fair trial.   See Dowling v. United States, 493 U.S. 342, 352 (1990); Lesko v. Owens, 881 F.2d 44, 49 (3d Cir. 1989), cert. denied, 493 U.S. 1036 (1990); Bisaccia v. Attorney General of the State of New Jersey, 623 F.2d 307, 312 (3d Cir.), cert. denied, 449 U.S. 1042 (1980); Perry v. Mulligan, 544 F.2d 674, 678 (3d Cir. 1976), cert. denied, 430 U.S. 972 (1977).   In Petitioner's case, the fact that handgun was admitted into evidence could not have been injurious to Petitioner's case since Petitioner's counsel expressly utilized the fact that the gun was *not* the murder weapon in order to cast doubt on credibility of a key state witness, all to Petitioner's advantage.   See Ans., Exs. RE29 at 68-1:10 and 77-8:78-4; RE30 at 3.27-10:3.31-7.   Since the admission of the gun into evidence was favorable to Petitioner's case, the fact of such admission cannot, by definition, be prejudicial to Petitioner and, as such, cannot take it out of the realm of state law matters not reviewable by this Court. See Dowling, 493 U.S. at 352; Lesko, 881 F.2d at 49; Bisaccia, 623 F.2d at 312; Perry, 544 F.2d at 678.

b.   CHALLENGES RELATED TO JURY INSTRUCTIONS

In his Ground Five, Petitioner challenges his trial court's jury instructions alleging that the instructions should have included the offense of passion/provocation manslaughter, a lesser included offense of murder.  See Pet., Mem. at 40-43.  This issue was examined by the state court and found without merit.  See State v. Francis, A-7411-97T4 (Oct. 11. 2000) (where the state court (1) noted that Petitioner not only failed to request the charge but expressly refused the trial court's offer to administer the charge, and (2) pointed out that the state law does not require the passion/provocation manslaughter charge where the facts do not clearly indicate the relevance of such charge).

Questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.  See Engle, 456 U.S. 107; Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991).  Hence, a habeas corpus claim could lie only where the jury instruction is "so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie." Id.  Thus, a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir.

1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it" <u>Id</u>.  Thus, where a habeas petitioner challenges jury instructions given in a state criminal proceeding,

> the only question for [the federal court] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction . . . , [the federal court] inquire[s] "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And [the court] also bear[s] in mind . . . that [the federal courts] "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

<u>Estelle v. McGuire</u>, 502 U.S. 62, 72-73 (1991) (citations omitted).

Consequently, a failure to instruct is even less likely to give rise to a habeas claim than erroneously given instructions. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Henderson v. Kibbe</u>, 431 U.S. at 155.  "The significance of the omission of such an instruction [should] be evaluated by comparison with the instructions that were given," <u>id.</u>, in order to establish whether the omission was but a harmless error.  <u>See</u> <u>Neder</u>, 527 U.S. at 8-11; <u>Smith</u>, 120 F.3d at 416-17.

26

In the case at bar, Petitioner alleges that the charge on passion/provocation manslaughter had to be given simply in view of Petitioner's involvement in the fight that took place prior to Petitioner and his accomplice chase of the victim. See Pet. at 42-43. However, the fact of that preceding fight clearly does not support such a charge since, even if the charge had been administered, Petitioner's jury, if acting reasonably, could not have used the fact of the fight to render the passion/provocation manslaughter verdict. See N.J.S.A. 2C:11-4b(2); State v. Mauricio, 117 N.J. 402, 411 (1990). Therefore, the decision of Petitioner's trial court not to administer such a charge was proper or, at the most, a harmless error. This Court agrees with Respondents that "the trial court's decision to abide by [P]etitioner's wishes and not charge passion/provocation manslaughter at trial[] was not erroneous, and did not infect the due process . . . ." Ans. (citing Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); Kontakis, 19 F.3d at 116; Johnson, 117 F.3d at 109; Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3rd Cor. 1992)).

Consequently, even if Petitioner had articulated a constitutional challenge with respect to his jury instructions, this Court would find the decision of the state court not an unreasonable application of this Supreme Court's precedent. See Williams, 529 U.S. at 405-06.

c.   CHALLENGES RELATED TO JUDICIAL CONDUCT

Finally, in his Ground Six, Petitioner alleges that his trial judge unduly advised the prosecutor "about how Carl Brown and [Petitioner] had contact," specifically, with respect to the question whether the contact was made through a telephone conversation or a direct communication. See Pet., Mem. at 44-45. According to the Petition, Brown and Petitioner "had been incarcerated together. Id. at 45. Since Petitioner (1) had a direct communication with Brown, see id.; but (2) insisted on exclusion of any information about Petitioner's conversation with Brown taking place in jail (which, according to Petitioner, could have prejudiced his case by stressing Petitioner's jail status), Petitioner's trial court, during the trial court's discussion with counsel outside the earshot of the jury, (1) discussed a way to accommodate Petitioner's desire to exclude any references to Petitioner's jail status while establishing the fact of Petitioner's contact with Brown, and (2) asked whether both counsel would be interested in inferring that the contact could have happened by phone. See Ans., Ex. Re27 at 225-15:233-1.

Petitioner alleges that this judicial inquiry prevented Petitioner from having a fair trial because the trial judge instructed "the prosecutor to lie." Pet., Mem. at 44. Even if it had been articulated in term of Petitioner's constitutional rights, Petitioner's claim would have no merit. The judge's statement

could not have any impact on the verdict since it was provided to counsel rather than the jury, and no undue inferences were conveyed to the jury by the prosecutor.  Moreover, even if such inferences had been conveyed to the jury, Petitioner's position could not have been disadvantaged by jury's impression that Petitioner contact with Brown took place over the phone rather than in jail: it could have been only bettered by such inference.

The Court has thoroughly reviewed each of the claims raised in the Petition and determined that habeas relief is not warranted. The Court will therefore dismiss the Petition.

## Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 123 S.Ct. 1029 (2003).

## CONCLUSION

Based on the foregoing, the Court dismisses the Petition for a Writ of Habeas Corpus and denies a certificate of appealability.

An appropriate order accompanies this Opinion.


  /s/ Dickinson R. Debevoise
            DICKINSON R. DEBEVOISE
            United States District Judge

Dated: January 16, 2007

30